UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BADAH INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE C. TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS AND BORDER PROTECTION; TROY MILLER, ACTING COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Defendants. | Court No. 21-00180 |

## COMPLAINT

Plaintiff, Badah Inc., by and through its attorneys, alleges and states as follows:

1. This action concerns Defendants' unlawful imposition and assessment of tariffs/duties on products imported from the People's Republic of China ("China") under Section 301 of the Trade Act of 1974 ("Trade Act").

2. This Complaint focuses on Defendants' so-called "List 3" and/or "List 4" tariffs/duties.

3. List 3 and/or List 4 is untimely because it was not issued within 12 months of the United States Trade Representative's (USTR) investigation into China's unfair intellectual property policies and practices pursuant to Section 301 (19 U.S.C. § 2411). List 3 and/or List 4 is not an authorized modification of earlier timely Section 301 duties under Section 307 of the Trade Act (19 U.S.C. § 2417) because it was based on China's retaliatory duties, not the intellectual property policies and practices investigated by the USTR, and increased, rather than delayed, reduced or terminated, the actions Defendants had already taken.

4. In addition, List 3 and/or List 4 violates the Administrative Procedure Act (APA) because the USTR failed to provide sufficient opportunity for public comment, failed to consider comments and relevant factors, and failed to base its decisions on a factual record. Rather, the USTR's predetermined decision to implement List 3 and/or List 4 was arbitrary and capricious.

5. Accordingly, the Court should set aside Defendants' *ultra vires* imposition of List 3 and/or List 4. Further, the Court should order Defendants to refund, with interest, any tariffs/duties paid by Plaintiff assessed pursuant to List 3 and/or List 4.

## JURISDICTION

6. Pursuant to 28 U.S.C. § 1581(i)(1)(B), this court has subject matter jurisdiction over this action. This statute confers "exclusive jurisdiction" to this court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7. Plaintiff is an importer that filed numerous entries for products which are subject to the additional *ad valorem* tariffs/duties under List 3 and/or List 4A, and those tariffs/duties are paid.

8. Defendant United States of America received the disputed tariffs/duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendant the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing appropriate responses, subject to the direction of the President. The USTR conducted this Section 301 investigation and made numerous decisions regarding List 3 and/or List 4.

10. Defendant, Katherine C. Tai, currently holds the position of USTR and serves as the director of the Office of the USTR.

11. Defendant U.S. Customs and Border Protection (CBP) is the agency that collects duties on imported merchandise entered into the United States. CBP collected payments made by Plaintiff for List 3 and/or List 4A tariffs/duties.

12. Defendant Troy Miller is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of tariffs/duties paid by Plaintiff under List 3 and/or List 4A.

## STANDING

13. Plaintiff has standing because it is "adversely affected or aggrieved" by agency action within the meaning of the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs/duties imposed by Defendants pursuant to List 3 and/or List 4 adversely affected and aggrieved Plaintiff because it was legally required to pay these unlawful duties.

## TIMELINESS OF ACTION

14. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. §2636(i).

15. The instant action contests Defendants' imposition and subsequent collection of List 3 and/or List 4 tariffs/duties. Plaintiff's List 3 claims accrued at the earliest on September 21, 2018, when the USTR published notice of List 3 in the *Federal Register*. Plaintiff's List 4 claims accrued at the earliest on August 20, 2019, when the USTR published notice of List 4A in the *Federal Register*. The instant action was filed within two years of the date that Plaintiff paid the List 3 and/or List 4A tariffs/duties. Therefore, Plaintiff has filed this action timely.

## RELEVANT LAW

16. Section 301 of the Trade Act authorizes the USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, the USTR may take "appropriate" action, such as imposing tariffs/duties on imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

17. Section 304 of the Trade Act requires the USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

18. Section 307 of the Trade Act, in pertinent part, allows the USTR to "modify or terminate" a previous action appropriately taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

19. On August 14, 2017, President Trump directed former Ambassador Robert Lighthizer to consider initiating a targeted investigation concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology pursuant to Section 301(b) of the Trade Act.

20. On August 18, 2017, the USTR formally initiated an investigation into whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under Section 301(b) of the Trade Act.

21. On March 22, 2018, the USTR released a report announcing the results of its investigation into China's trade policies and practices. The USTR found that certain acts, policies, and practices of the Chinese government related to technology transfer, intellectual property rights

(IPR), and innovation (hereinafter "unfair technology and IPR trade policies and practices") are unreasonable or discriminatory and burden or restrict U.S. commerce.

22. On April 6, 2018, the USTR published notice of its intent to impose an additional duty of 25 percent on a list of products of Chinese origin under Section 301 in response to its findings about China's unfair technology and IPR trade policies and practices. The products on the proposed list covered 1,333 tariff subheadings with a total value of approximately $50 billion of estimated annual trade value for calendar year 2018, which, the USTR explained, was commensurate with an economic analysis of the harm caused by China's unfair technology and IPR trade policies and practices to the U.S. economy, as determined by the USTR's Section 301 investigation.

23. On June 20, 2018, the USTR published notice of its final list of products, commonly known as "List 1," imposing an additional duty of 25% *ad valorem* on those products in response to China's unfair technology and IPR trade policies and practices as determined by the USTR. The USTR narrowed the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an estimated annual trade value of $34 billion.

24. On August 16, 2018, the USTR published notice of a second final list of products, commonly known as "List 2," which were subject to an additional duty of 25% *ad valorem*. This list is comprised of 279 tariff subheadings with an annual trade value of approximately $16 billion.

25. The $50 billion total trade value for List 1 and 2 matched the $50 billion in estimated harm caused to U.S. businesses by China's unfair technology and IPR trade policies and practices, as determined by the USTR in its report.

26. After the USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs/duties on Chinese goods if China retaliated against the United States, *i.e.,* a different basis for imposing Section 301

tariffs/duties other than the unfair technology and IPR trade policies and practices investigated and reported on by the USTR that formed the basis of List 1 and 2.

27. On June 18, 2018, the USTR, acknowledging the President's directive, stated that it would design newly proposed duties to address China's threatened retaliatory measures, rather than any of the unfair technology and IPR trade policies and practices identified in its Section 301 investigation and report.

28. Despite these warnings from Defendants, China retaliated by imposing 25% *ad valorem* tariffs/duties on $50 billion in U.S. goods imposed in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs/duties under List 1 (July 6, 2018) and List 2 (August 23, 2018).

29. Approximately one week after China imposed its first round of retaliatory duties, the USTR published notice of a new proposed action to impose an additional 10 percent *ad valorem* duty on a new list of products from China with an annual trade value of approximately $200 billion. In support, the USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which the USTR may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, if such action is being taken under Section 301(b) and is no longer appropriate. But in its notice, the USTR confirmed that it had relied on China's decision to impose retaliatory duties as the basis for its proposed new action, not on the unfair technology and IPR trade policies and practices identified in the USTR's Section 301 investigation and report. The USTR set a deadline of August 17, 2018 for initial comments, August 20-23, 2018 for a public hearing, and August 30, 2018 for rebuttal comments.

30. Shortly thereafter, then Ambassador Lighthizer announced that the USTR would propose to increase the additional duty from 10% to 25% *ad valorem*, once again in response to China's retaliatory tariffs/duties, not its unfair technology and IPR trade policies and practices.

31. At approximately the same time, the USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018, less than a month later, as the new deadline for both initial and rebuttal comments from the public. The adjustment, deviating from its own past practices, prevented both the USTR and the public from considering the initial comments presented at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. The USTR also limited each hearing participant to five minutes. Nevertheless, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. The USTR did not respond to any of the over 6,000 comments that it received or address any of the testimony presented by roughly 350 witnesses.

32. On September 21, 2018, the USTR published notice of the final list of products subject to an additional duty, commonly known as "List 3." The USTR ultimately imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. The USTR determined that the List 3 duties would apply to all products on List 3 that enter the United States from China on or after September 24, 2018.

33. As legal support for its List 3 action, the USTR cited Section 307(a)(1)(B) of the Trade Act, which provides that the USTR may modify or terminate any action, subject to the specific direction of the President taken under Section 301 if the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased. The USTR also cited Section 307(a)(1)(C) of the Trade Act, asserting that China's response to the $50 billion tariff action had shown that the current List 1 and List 2 actions were no longer as appropriate.

34. In May 2019, the USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.

35. The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of products which the USTR granted exclusions from the List 3 duties.

36. On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, the USTR announced its intent to proceed with yet another list, "List 4," covering even more products subject to additional duties. Under the USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem*, once again for China's retaliation, not its unfair technology and IPR trade policies and practices.

37. As with List 3, the USTR invited the public to comment on proposed List 4 and participate in a hearing. The public submitted nearly 3,000 comments. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input because the USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing.

38. On August 1, 2019, citing another new basis for action, namely China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs/duties would become effective September 1, 2019 at a rate of 10% *ad valorem*.

39. On August 20, 2019, the USTR issued a final notice adopting List 4 in two tranches, List 4A and List 4B. List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions based on health, safety, national security, and other factors), effective December 15, 2019. Once again, the USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to

vaguely claim without justification or support that its determination took account of the public comments and the testimony.

40.     As legal support for its action, the USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action pursuant to Section 301 of the Trade Act.

41.     Just ten days later, the USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. The USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, China responded by announcing further tariffs/duties on U.S. goods. The USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency, not its unfair technology and IPR trade policies and practices, as grounds for its action.

42.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, the USTR published notice that it would suspend indefinitely the imposition and assessment of additional duties of 15 percent *ad valorem* on products of China covered by List 4B. The USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, an action that ultimately became effective on February 14, 2020, when the USTR reduced the applicable duty rate by half to 7.5 percent *ad valorem*.

43.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint, with the exception of products which the USTR granted exclusions from the List 4A duties. The proposed duties on products covered by List 4B remain suspended. In 2021 Katherine C. Tai was confirmed as the new United States Trade Representative.

## STATEMENT OF CLAIMS

### COUNT ONE

### (DECLARATORY JUDGMENT-VIOLATION OF THE TRADE ACT OF 1974 –

### LIST 3)

44. Paragraphs 1 through 43 are incorporated herein by this reference as though set out in full.

45. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

46. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the imposition and assessment of List 3 tariffs/duties.

47. Pursuant to Section 301 of the Trade Act, the USTR may impose tariffs/duties when it determines that an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate. 19 U.S.C. § 2411(b). The USTR failed to predicate its action giving rise to List 3 on any such determination. Rather, the USTR imposed List 3 based solely on China's retaliation against List 1 and List 2 tariffs/duties, which is not an authorized justification under Section 301 the Trade Act.

48. If the USTR concludes, upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires the USTR to determine what action, if any, to take within 12 months after the date on which the investigation is initiated. 19 U.S.C. § 2414(a)(1)(B), (2)(B). The USTR's action giving rise to List 3 occurred in September 2018, over a year after August 18, 2017, when the USTR initiated the underlying Section 301 investigation.

49. Section 307 of the Trade Act does not permit Defendants to increase tariffs/duties for reasons unrelated to the acts, policies, or practices that the USTR investigated pursuant to Section 301 of the Trade Act. Contrary to Section 307, the USTR implemented List 3 based on China's retaliation against List 1 and List 2 tariffs/duties.

50. Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer appropriate but only to delay, reduce, or terminate such actions in such cases. Contrary to Section 307, the USTR increased tariffs/duties through the imposition of List 3.

51. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – LIST 3)

52. Paragraphs 1 through 43 are incorporated herein by this reference as though set out in full.

53. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

54. Defendants exceeded their authority under the Trade Act in promulgating List 3, and thereby acted not in accordance with the law and in excess of statutory authority for the reasons set forth in Count One.

55. Defendants failed to offer any evidence for any asserted increased burden from China's intellectual property policies and practices that were the subject of the USTR's Section 301 investigation.

56. Defendants also promulgated List 3 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' predetermined decision-making resulted in the unlawful imposition and subsequent collection of tariffs/duties on Plaintiff's imports covered by List 3.

## COUNT THREE

## (DECLARATORY JUDGMENT-VIOLATION OF THE TRADE ACT OF 1974 – LIST 4)

57. Paragraphs 1 through 43 are incorporated herein by this reference as though set out in full.

58. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

59. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the imposition and assessment of List 4 tariffs/duties.

60. Pursuant to Section 301 of the Trade Act, the USTR may impose tariffs/duties when it determines that an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate. 19 U.S.C. § 2411(b). The USTR failed to predicate its action giving rise to List 4 on any such determination. Rather, the USTR imposed List 4 based solely on China's retaliation against List 1 and List 2 tariffs/duties, which is not an authorized justification under Section 301 the Trade Act.

61. If the USTR concludes, upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires the USTR to determine what action, if any, to take within 12 months after the date on which the investigation is initiated. 19 U.S.C. § 2414(a)(1)(B), (2)(B). The USTR's action giving rise to List 4 occurred in August 2019, over a year after August 18, 2017, when the USTR initiated the underlying Section 301 investigation.

62. Section 307 of the Trade Act does not permit Defendants to increase tariffs/duties for reasons unrelated to the acts, policies, or practices that the USTR investigated pursuant to Section 301 of the Trade Act. Contrary to Section 307, the USTR implemented List 4 based on China's retaliation against List 1 and List 2 tariffs/duties.

63. Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer appropriate but only to delay, reduce, or terminate such actions in such cases. Contrary to Section 307, the USTR increased tariffs/duties through the imposition of List 4.

64. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 4 are *ultra vires* and contrary to law.

## COUNT FOUR

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – LIST 4)

65. Paragraphs 1 through 43 are incorporated herein by this reference as though set out in full.

66. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

67. Defendants exceeded their authority under the Trade Act in promulgating List 4, and thereby acted not in accordance with the law and in excess of statutory authority for the reasons set forth in Count One.

68. Defendants failed to offer any evidence for any asserted increased burden from China's intellectual property policies and practices that were the subject of the USTR's Section 301 investigation.

69. Defendants also promulgated List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' predetermined decision-making resulted in the unlawful imposition and subsequent collection of tariffs/duties on Plaintiff's imports covered by List 4A.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this court

(1) declare that Defendants' actions resulting in tariffs/duties on products covered by List 3 and/or List 4 are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 and/or List 4 in violation of the APA;

(3) vacate the List 3 and/or List 4 rulemaking;

(4) order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3 and/or List 4A;

(5) permanently enjoin Defendants from applying List 3 and/or List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3 and/or List 4;

(6)    award Plaintiffs their costs and reasonable attorney fees; and

(7)    grant such other and further relief as may be just and proper.

Dated: April 21, 2021            Respectfully submitted,

                                       By:    /s/ Elon A. Pollack, Esq
                                               Elon A. Pollack, Esq.
                                               Stein Shostak Shostak & Pollack O'Hara
                                               Attorneys for Plaintiff
                                               865 S. Figueroa Street, Suite 1388
                                               Los Angeles, California 90017
                                               Tel: (213) 630-8888
                                               e-mail: elon@steinshostak.com

CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 1388, Los Angeles, California 90017.

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on **April 21, 2021**, copies of **Plaintiffs' Summons, Complaint, Information Sheet (Form 5) and Disclosure of Corporate Affiliations, etc. (Form 13)** were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

Office of Chief Counsel
U.S. Customs and Border Protection
c/o Office of the Attorney in Charge
International Trade Field Office,
Commercial Litigation Branch.
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

I declare that I am employed by a member of the bar of this court, at whose direction this service was made.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on **April 21, 2021**, in Los Angeles, California.

**/s/ Greg Manalac**
**Greg Manalac**